### No. C-1409

**The People of the State of Colorado v. Joseph Edwin Hinchman**
**No. C-1414**
**Joseph Edwin Hinchman v. The People of the State of Colorado**

(589 P.2d 917)

Decided December 11, 1978.          Rehearing denied January 8, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, James S. Russell, Assistant, for The People.

Joe Clarence Medina, Charles F. Murray, for Joseph Edwin Hinchman.

*En Banc.*

528

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant and the People separately requested certiorari from the Colorado Court of Appeals' opinion in *People v. Hinchman,* 40 Colo. App. 9, 574 P.2d 866. We granted both petitions and consolidated the matters. We affirm in part and reverse in part.

The defendant, Joseph Hinchman, was convicted of first-degree arson and conspiracy to commit arson. At trial, the district court denied his motion to suppress as evidence a gasoline container which was observed during a search of the defendant's home on March 20, 1975. The validity of that search is not contested. Officers seized other gasoline containers but unwittingly left behind the container at issue. Two officers returned to the defendant's home on March 21, 1975 and sealed the remaining container. Approximately four days later, at the suggestion of the police, the defendant's wife voluntarily brought the can to the police. The fact of the second entry was not communicated to counsel for the defense during the pretrial discovery.

The People introduced at trial expert testimony relating to fuel and vapors obtained from the can. Defense counsel then moved to have the evidence concerning vapors and fuel in the can suppressed. The trial court concluded that the defendant knew the sources of the relevant evidence prior to trial and should have made a motion to suppress at that time. It is to be inferred from the court's ruling that it determined that the motion was not timely because no evidence had been seized in the second search. The court of appeals affirmed this ruling.

■ We agree that no evidence was seized during the officers' second entry.[1] The officer simply acted to preserve potentially relevant evidence which the defendant's wife later surrendered voluntarily. The record does not show that analysis of the container's contents would not have been possible but for the policemen's actions in sealing the opening. The defendant's claim that evidence was illegally seized as a result of the second visit cannot be sustained.

■ The second issue on appeal concerns the limitation placed by the trial court upon the defense counsel's cross-examination of Bobby Abrahamson, Jr., the chief witness for the prosecution. Abrahamson initially was charged with first-degree arson. The prosecutor offered to reduce charges against him in return for his testimony against the defendant. The

---

[1] Consequently, the recent opinion in *Michigan v. Tyler,* _____U.S. _____, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), is not dispositive. In *Michigan v. Tyler* evidence was seized in a series of searches conducted subsequent to the initial search. The initial search was proper by reason of exigent circumstances and the plain view doctrine. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

court permitted cross-examination concerning the plea bargain.

Abrahamson also had been involved in a separate homicide for which he was charged as an accessory to felony-murder. The prosecutor in that case agreed to treat Abrahamson's participation as a juvenile offense if he would testify against the principals, which he did. At the time of the arson, Abrahamson was awaiting sentencing to the reformatory at Buena Vista.

The defendant sought to question Abrahamson about his role in the felon-murder and the plea bargain struck in that case. The district court ruled that evidence of the juvenile adjudication was not admissible, but that the defendant could show that the witness previously had received favorable treatment in return for testifying for the prosecution. The court of appeals concluded that the trial court had acted within its discretionary powers to determine the scope of cross-examination.

The defendant relies upon *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and *People v. King,* 179 Colo. 94, 498 P.2d 1142 (1972) in arguing that the policy against introduction of juvenile dispositions in subsequent proceedings should have given way before the defendant's sixth amendment right to confront adverse witnesses. The relevant portion of the Juvenile Code says:

"No adjudication, disposition, or evidence given in proceedings brought under section 19-1-104 shall be admissible against a child in any criminal or other action or proceeding, except in subsequent proceedings under section 19-1-104 concerning the same child." Section 19-1-109(2), C.R.S. 1973.

Without addressing the extent of the restrictions the statute imposes, we find the trial court's accommodation of the competing interests in this case appropriate and within the bounds of its discretion to determine the scope of cross-examination. *Davis v. Alaska, supra,* held that cross-examination about the witness' juvenile court record and probation status was necessary to afford the defendant his right of confrontation. However, the witness was on probation for burglary, the same offense with which the defendant in that case was charged. Cross-examination was necessary to reveal that the defendant "might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation." The same potential for bias was not present in this case. Abrahamson's punishment for the previous juvenile offense was not connected to the conviction in this case. Since cross-examination as to previous plea bargaining was allowed, the jury was able to consider Abrahamson's credibility in light of his history of bargaining for leniency in return for testimony.

In *People v. King, supra,* an informant testified against the defendant who was charged with the possession and sale of narcotic drugs. The court ruled that cross-examination regarding pending charges against the informant for possession and sale of illegal drugs should have been

allowed. Again, as in *Davis v. Alaska, supra,* it was necessary so that the jury could be apprised of the informant's motives. Hidden motives are not at issue in the instant case. Neither the status of pending charges nor other prosecutions depended upon Abrahamson's testimony against the defendant.

The facts here do not establish a conflict between the defendant's right of confrontation and the policy against use of juvenile adjudications or pending charges for purposes of impeachment. The jury was permitted to assess the defendant's credibility in the light of both plea bargains. No evidence of bias or interest of the witness was kept from it. Under the facts of this case, we conclude that the defendant was not denied his right to confront adverse witnesses.

The final issue presented by this case is whether the district court had power to suspend a portion of the defendant's sentence. The defendant was convicted of first-degree arson which is a class three felony, section 18-4-102, C.R.S. 1973, and punishable by a prison term of five to 40 years, section 18-1-105, C.R.S. 1973. The court first imposed a sentence of five to six years, then suspended three years of the minimum and maximum. The resulting sentence was for two to three years' imprisonment. Since the court of appeals held the People could not raise the issue for the first time on appeal, the court did not reach the merits of the claim that the trial court lacked jurisdiction to suspend the sentence so as to reduce it below the statutory minimum.

As we have recently noted in *People v. Henderson,* 196 Colo. 441, 586 P.2d 229, the alleged defect in the sentence is jurisdictional and, therefore, may be raised for the first time on appeal.

Section 16-11-304, C.R.S. 1973 explicitly states the power of judges to sentence for offenses such as that here involved:

"When a person has been convicted of a . . . class 3 felony, the court imposing the sentence . . . shall establish a maximum and a minimum term for which said convict may be imprisoned. The maximum term shall not be longer than the longest term fixed by law . . . and the minimum term shall not be less than the shortest term fixed by law for the punishment of the offense of which he was convicted."[2]

It is the legislature's prerogative to define crimes and prescribe punishments. *People v. Arellano,* 185 Colo. 280, 524 P.2d 305 (1974); *People v. Stark,* 157 Colo. 59, 400 P.2d 923 (1965). Since the General Assembly explicitly has limited sentencing discretion regarding class 3 felonies, the

---

[2] The same scope of sentencing power is indicated by section 16-11-101, C.R.S. 1973 (1976 Supp.):
"In . . . class 3 felonies, the defendant may be sentenced to imprisonment for a period of time within the minimum and maximum sentence authorized for the class of offense of which the defendant was convicted."

courts have no jurisdiction to sentence inconsistently with the minimum and maximum terms specified by statute. *People v. Pauldino,* 187 Colo. 61, 528 P.2d 384 (1974); *People v. Jenkins,* 180 Colo. 35, 501 P.2d 742 (1972); *People v. Jones,* 176 Colo. 61, 489 P.2d 596 (1971).

Nor may the court circumvent legislative dictates by first sentencing within legislatively prescribed parameters, and then suspending a portion of the minimum and maximum. The result is an invasion of the legislature's exclusive province to set punishments.

Accordingly, we reverse as to the trial court's sentencing jurisdiction and affirm with respect to the motion to suppress and the scope of cross-examination. We return the case to the court of appeals for remand to the district court with directions that it proceed in accordance with the views expressed herein.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. In my opinion, the majority has misapprehended the significance of the facts of this case and misconstrued the applicable law.

Defendant's conviction rests largely on the testimony of Bobby Abrahamson, Jr. Although there is other evidence corrobative of defendant's guilt, young Abrahamson's testimony is the lynchpin of the prosecution's case. He testified that defendant had hired him to set fire to the offices of a local attorney and that before the fire he went to defendant's garage and picked up the red and yellow gasoline can which became the object of defendant's suppression motion. He further testified that, after he set the fire, he returned the can to the garage. The gasoline can contained vapors which provided the basis for expert testimony on behalf of the prosecution.

About four months before the fire, Abrahamson was implicated in a felony-murder. He later consummated a plea bargain, in which the district attorney agreed to prosecute him as a juvenile offender. Less than three weeks before he set the fire, Abrahamson was granted immunity from further prosecution for the murder in return for his testimony against his co-participants in the murder.

Abrahamson was later arrested for setting the fire and charged with first-degree arson. He maintained his innocence until the police (acting with the authority of the same district attorney's office which had made the felony-murder plea bargain with Abrahamson) offered to reduce the charge against him to second-degree arson and assured him that any sentence he received would run concurrently with the sentence he had

received for the murder. He then told police that the defendant hired him to set the fire. As a result of that identification, defendant was arrested, and a search warrant issued for a search of his home and garage.

Exhibit "T," the gas can in question, has a history that is significant to the issues in this case. Exhibit "T" is a two and one-half gallon red and yellow gasoline can. No can of that description appears in either the search warrant or the inventory returned after the search warrant was executed. It was not seized in the first search of defendant's garage on March 20, 1975. Chief Hunter, the officer who conducted that search, testified that although he saw the can in the garage on March 20, he forgot to take it with him.

On the night of March 21, Chief Hunter returned to the defendant's garage and sealed the lid on the can with tape to prevent any gasoline vapors that might be in the can from escaping. He conceded that the warrant authorizing the search was executed on March 20, and that a return was made. He also conceded that he embarked on his nighttime search of the defendant's premises without a warrant. Although he sealed the can, he deliberately left it in the garage. Defendant did not discover the second, illegal entry until he was able to cross-examine Chief Hunter at the time of trial.

On March 24, Chief Hunter contacted defendant's estranged wife. As a result of their conversation, Mrs. Hinchman obtained the red and yellow gasoline can from the garage and delivered it to him. Mrs. Hinchman testified that she was positive that the red and yellow gas can was not in the garage on the morning of March 21, and that she was surprised to see it when she returned on March 24. Although defendant was aware that Mrs. Hinchman had brought the gasoline can to Chief Hunter, he did not learn until cross-examination was commenced that his wife's actions were the result of police prompting.

## I.

At trial, the district judge denied defendant's motion to suppress evidence relating to the gasoline can, on the ground that the motion was not timely filed. Crim. P. 41(e)(5), entitled "Motion for Return of Property and to Suppress Evidence," provides in part:

"The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the court where the trial is to be had. *The motion shall be made and heard before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion,* but the court, in its discretion, may entertain the motion at the trial." (Emphasis supplied.)

The majority states that "It is to be inferred from the court's ruling that it determined that the motion was not timely because no evidence had been seized in the second search." The record reflects that the district judge did not address himself to the question, whether taping the can to prevent the escape of gasoline fumes was or was not a seizure. Instead, his ruling appears to be based on his conviction that, since defendant knew before trial that the gasoline can would be introduced as evidence, any motion relating to its suppression should have been made before trial. The approach of the trial judge violates Crim. P. 41(e)(5), which provides that a motion to suppress is timely if it is made when the defendant becomes aware of grounds for his motion.

Chief Hunter testified that he taped the gasoline can to prevent fumes from escaping. It is a reasonble conclusion that taping the lid of the can would, indeed, have prevented fumes from escaping. If his actions caused the fumes to remain in the can and to be subject to police testing which resulted in evidence introduced against the defendant, then evidence about those fumes has obviously been "seized." The majority states that Chief Hunter did not seize anything, since he merely "acted to preserve potentially relevant evidence." A trespass to preserve evidence is indistinguishable from a seizure for purposes of the Fourth Amendment. Since the defendant did not know of the trespass until Chief Hunter testified at trial, his motion to suppress was timely.

When police engage in a warrantless search, it is incumbent upon the prosecution to demonstrate that the search fits into one of the narrow exceptions to the general requirement that a warrant be obtained for every search. *People v. Neyra,* 189 Colo. 367, 540 P.2d 1077 (1975); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The same burden must be borne if the prosecution wishes to prove that a warrantless search has not violated a defendant's Fourth Amendment rights because no seizure resulted.

Finally, since the seizure was made long after any justification existed for a warrantless invasion of defendant's home, the evidence was seized in a "stale search," and subject to suppression once a proper motion was made. *Mincey v. Arizona,* 434 U.S. 1343, 98 S.Ct. 23, 54 L.Ed.2d 56 (1977); *Michigan v. Tyler,* _____ U.S. _____, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).

## II.

The trial court's other error resulted from its curtailment of defendant's cross-examination of Bobby Abrahamson, Jr. The trial court's ruling violated defendant's right "to be confronted with the witnesses against him. . . ." *U.S. Const.,* Amend. VI.

The crucial part which Abrahamson played in the prosecution's case has been outlined above. His accusations provide by far the greatest part of the evidence which speaks for conviction. Defendant's defense of the

charge against him rested to a large degree on his ability to persuade the jury that Abrahamson was not telling the truth. Had the jury doubted Abrahamson's story, defendant's acquittal would have likely followed.

Defendant wanted to inquire into Abrahamson's adjudication in the felony-murder. That inquiry could have borne two fruits: (1) evidence of Abrahamson's involvement would have cast a shadow on his general credibility; (2) defendant could logically have argued that the felony-murder plea agreement was the beginning of a series of understandings between Abrahamson and the prosecution that ended in Abrahamson implicating the defendant.

Contrary to the majority's suggestion, the trial court did not limit cross-examination because the inquiry was not relevant to the case. The relevance of the proposed line of questioning is obvious. Instead, the trial court relied on section 19-1-109(2), C.R.S. 1973:

"*19-1-109. Effect of proceedings.* (1) No adjudication or disposition in proceedings under section 19-1-104 shall impose any civil disability upon a child or disqualify him from any state personnel system or military service application or appointment or from holding public office.

"(2) No adjudication, disposition, or evidence given in proceedings brought under section 19-1-104 shall be admissible against a child in any criminal or other action or proceeding, except in subsequent proceedings under section 19-1-104 concerning the same child."

The trial court found, and the majority seems to assume, that this statute foreclosed defendant's inquiry into Abrahamson's felony-murder adjudication, since the witness had been prosecuted as a juvenile. Even assuming that the statute will bear the interpretation given it, the state's interest in preserving the confidentiality of juvenile proceedings and in helping juvenile offenders achieve rehabilitation in an atmosphere free from notoriety must fall before the defendant's paramount right to defend himself. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The majority relies on the fact that in *Davis v. Alaska, supra,* the witness was on probation for a prior offense when he testified. It draws from this fact the conclusion that a state policy protecting juveniles must supersede a defendant's right to confront witnesses, unless the state is "holding a club" over the witness at the time he testifies. But that is not the *ratio decidendi* of *Davis v. Alaska, supra.* Rather, the opinion in that case is a refutation of the majority's decision:

"'The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940).

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. . . .

. . . .

"[T]o make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which ' ''would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'' *Brookhart v. Janis,* 384 U.S. 1, 3.' *Smith v. Illinois,* 390 U.S. 129, 131 (1968)." *Davis v. Alaska, supra,* 415 U.S. 316, 318.
*See also People v. Taylor,* 190 Colo. 210, 545 P.2d 703, 705 (1976); *People v. Crawford,* 191 Colo. 504, 553 P.2d 827, 829 (1976); *Westen, Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 *Harv. L. Rev.* 567, 580-81 (1978).

In this case, evidence of the witness' prior adjudication was important not only to cast general doubt on his credibility, but to show that his accusations against defendant did not arise in a vacuum. Defendant should have been allowed to argue that Abrahamson's identification was part and parcel of a series of bargains he made with the district attorney's office. The majority appears to feel that defendant's right to confrontation was satisfied because he was allowed to elicit from the witness an admission that he had previously engaged in plea bargaining. That previous bargain could have been the result of an offense no more serious than a traffic ticket. Such a general admission was insufficient to put the jury on notice that Abrahamson's bargain stemmed from charges that he had been involved in committing murder. Murder was the only crime for which the state could impose the death penalty. *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *cf., People v. District Court,* 196 Colo. 401, 586 P.2d 31. It would be a reasonable inference that

Abrahamson appreciated favorable treatment. We need not speculate to conclude that the jury could have taken this information into account when it weighed Abrahamson's credibility.

A state may protect juveniles and further their rehabilitation by preserving the confidentiality of juvenile proceedings. *Cf., Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977). But *Davis v. Alaska, supra,* makes it clear that the state may not force a defendant to pay all the costs attendant upon enforcing that policy:

"The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." *Davis v. Alaska, supra,* at 320.

Accordingly, I would remand the proceeding for a new trial, with orders to conduct a hearing to determine whether there would have been evidence of fumes in the can if the police had not taped it shut, and to allow the defendant to question the witness about his prior adjudication relating to the felony-murder.

MR. JUSTICE CARRIGAN joins me in this dissent.