The PEOPLE of the State of
Colorado, Petitioner,

v.

The DISTRICT COURT OF the CITY
AND COUNTY OF DENVER, State of
Colorado, and Alvin D. Lichtenstein, one
of the Judges thereof, Respondents.

Clarence BURNS, Petitioner,

v.

DISTRICT COURT In and For the
SECOND JUDICIAL DISTRICT and Al-
vin D. Lichtenstein, one of the Judges
Thereof, Respondents.

Nos. 83SA284, 83SA266.

Supreme Court of Colorado,
En Banc.

Dec. 5, 1983.

Rehearing Denied Jan. 9, 1984.

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nathan B. Coats, Deputy Atty. Gen., John Daniel Dailey, First Asst. Atty. Gen., Denver, for amicus curiae, Atty. Gen.

Donnell, Davis & Salomon, Cathlin Donnell, Pfaff & St. Joan, Jacqueline St. Joan, Denver, for amicus curiae, Colo. Coalition for Justice for Abused Women.

Colo. Women's Bar Ass'n, Suzanne Saunders, President, Mary T. Hoagland, Pamela A. Ray, Denver, for amicus curiae, Colo. Women's Bar Ass'n.

Haddon, Morgan & Foreman, P.C., Bryan Morgan, Mitch Geller, Denver, for respondent Alvin D. Lichtenstein.

David F. Vela, State Public Defender, David D. Wymore, Chief Deputy State Public Defender, John A. Sadwith, Michael J. Heher, Deputy State Public Defenders, Denver, for Clarence Burns.

ROVIRA, Justice.

In *People v. District Court,* No. 83SA284, we issued a rule to show cause why respondent district court should not be directed to vacate the sentences imposed on Clarence Burns on June 22 and June 29, 1983. In *Burns v. District Court,* No. 83SA266, we issued a rule to show cause why respondent district court should not be directed to vacate the sentence imposed on defendant on June 29, 1983. We consolidated these original proceedings and now make the rule absolute in both proceedings.

I.

Patti Burns and Clarence Burns (defendant) were married in 1967. One son, Darren, was born of this marriage. In late June or July 1982, Mrs. Burns met with an attorney, Terre Rushton, to discuss obtaining a divorce from her husband. On August 4, 1982, she left the marital home and took her son, Darren, and some of their

belongings with her. She left no explanation and no indication of their whereabouts.

When defendant came home from work, he did not realize that his wife had left him until later that evening when he was served with divorce papers and a Temporary Restraining Order which prohibited him from having any contact with his wife, her parents, or Darren. On August 5, Ms. Rushton spoke with Mr. Burns and set up a meeting to be held on August 17 in her office. She told him that he could meet with his wife at that time to discuss visitation with Darren and to determine if counseling would be appropriate. That meeting never occurred.

On August 13, defendant redeemed his .38 caliber revolver from the Mile Hi Pawn Shop. Two days later, he saw his wife's car near her parents' house. He climbed into the trunk and hid there until Mrs. Burns and Darren drove to their apartment. Defendant then got out of the trunk and followed them inside. Mr. and Mrs. Burns went into the bedroom to discuss the situation. At one point, Darren saw the defendant with a gun at his head threatening to commit suicide if Mrs. Burns would not come back to him. Darren ran outside. Exactly what happened next is not clear. But the defendant's subsequent statements and his plea of guilty to second-degree murder established that the defendant shot his wife five times at close range in her head and upper body with the revolver that he had recently redeemed. She died as a result of these wounds. The defendant was then charged with first-degree murder and mandatory sentence for a crime of violence.

Subsequently, the People and the defendant entered into a plea bargain, and the respondent court conducted a Crim.P. 11 hearing. Under the plea-bargaining agreement set forth in the record, the district attorney agreed to dismiss the first-degree murder charge and mandatory sentence for crime of violence, and to ask for a sentence of no more than ten years in exchange for defendant's plea of guilty to second-degree murder. Before accepting his guilty plea, respondent warned defendant that the court would not be bound by the People's recommendation as to an appropriate sentence. In response to questions from the respondent, defendant acknowledged that he was knowingly and voluntarily entering a plea of guilty and that nothing presently affected his ability to understand the proceedings and to think clearly. The respondent then advised the defendant of his constitutional rights and asked a series of questions concerning defendant's mental state at the time of the shooting. Defendant admitted that on August 15 he was mentally aware that he was shooting his wife and that her death was a practical certainty as a result of his acts.[1] Respondent also explained the elements of second-degree murder,[2] and defendant answered in the affirmative when asked if he was freely, voluntarily, and intentionally entering his plea of guilty to that crime, without undue influence, coercion, or threats from anyone. In addition, the prosecutor offered a factual basis for the charge. Defendant again admitted that he shot his wife five times and did not dispute the prosecutor's version of the essential facts. The defendant's plea of guilty to second-degree murder was accepted, he was granted leave to apply for probation, and his bond was continued.

The first sentencing hearing occurred on June 22. After considering the presentence report prepared by the probation department, and hearing testimony and arguments, respondent ruled that extraordinary mitigating circumstances justified a sen-

---

1. The mental culpability requirement of "knowingly," which is an element of second-degree murder, is defined as follows:

   "A person acts 'knowingly' . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts 'knowingly' . . . with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."
   Section 18–1–501(6), C.R.S.1973 (1978 Repl. Vol. 8).

2. The elements are: (1) causing the death of a person, (2) causing that death knowingly, (3) but not after deliberation. Section 18–3–103, C.R.S.1973 (1978 Repl.Vol. 8).

tence below the presumptive range for second-degree murder. Respondent sentenced defendant to four years in prison and one year of parole, which is one-half of the lowest sentence within the presumptive range.[3] Then, respondent suspended defendant's sentence upon the following conditions: he must participate in a work-release program for two years at the Denver County Jail, must continue therapy with Michael Lindsay for two years or until Mr. Lindsay discharged him, and must not possess or carry any weapon for two years. Respondent discharged defendant's bond and placed him in the sheriff's custody. The mittimus was signed and issued. Defendant began serving his sentence.

On June 28, *sua sponte* and without notice to the parties of the reason, respondent notified the parties to be in court on June 29. At that time, the respondent stated that his decision to suspend defendant's sentence had been based "solely" on concerns about defendant's son, Darren. He said that on June 27 he was informed for the first time by a member of the media that Mrs. Burns had left a legacy of approximately $100,000 to Darren.[4] He took judicial notice of the exact amount of the legacy ($82,571.18) from Probate Court Case No. 82PR1451. Respondent then said that this financial support "eliminates the very foundation upon which the sentence was imposed and the suspension of sentence was based." Respondent, believing that the double jeopardy clauses of the United States and Colorado Constitutions prevented an alteration of the sentence itself, then revoked the suspension of defendant's sentence and placed him in the custody of the Department of Corrections for four years, plus one year of parole.

The defendant objected to the revocation of the suspended sentence on the grounds that he had done nothing to warrant revo-

cation, and was being denied the opportunity for a hearing on the issue. The district attorney then asked the respondent if he would consider resentencing if double jeopardy did not apply, and respondent stated that he would be inclined to impose a stiffer sentence within the mitigating range if he was not precluded from doing so by the double jeopardy clauses of the United States and Colorado Constitutions.

The People, in 83SA284, seek relief in the nature of a writ of mandamus under C.A.R. 21 from the rulings of the trial court. They argue that the respondent acted in excess of his jurisdiction, grossly abused his discretion, and imposed void sentences because extraordinary mitigating circumstances did not exist as a matter of law. They ask this court to vacate the sentences, to find extraordinary aggravating circumstances, and to impose a sentence within the aggravated range; or, at least, to impose a sentence within the presumptive range for second-degree murder.

Defendant argues that an original petition for relief in the nature of a writ of mandamus is an inappropriate mode of appeal of a defendant's sentence by the People. He asserts that since no statute or rule of criminal procedure allows the People to appeal a sentence, a writ in the nature of mandamus should not be available. In addition, defendant argues that the evidence supports a sentence within the extraordinary mitigating range. The defendant also claims that any enhancement of his sentence by this court or the respondent would violate his constitutional right to be free from being twice put in jeopardy.

The respondent claims that both a legal foundation and evidence sustained his finding of extraordinary mitigating circumstances and the sentences were legally imposed. The respondent did not address the issues raised by the defendant, but adopted

---

**3.** Section 18–3–103, C.R.S.1973 (1978 Repl.Vol. 8); section 18–1–105, C.R.S.1973 (1978 Repl. Vol. 8) (1982 Cum.Supp.).

**4.** Later in the second sentencing hearing, respondent admitted that, prior to the pronouncement of the first sentence, respondent had

known that the defendant had renounced any interest in certain insurance proceeds arising from the death of Mrs. Burns. However, respondent maintained that he did not know of the amount until after the first sentence had been rendered.

the arguments and positions offered by him.

## II.

■ The exercise of jurisdiction in an original proceeding in the nature of mandamus is discretionary and governed by the circumstances of the case. If an issue of sufficient public importance is involved, we have often exercised original jurisdiction. *Colo. Const.* art. VI, sec. 3; *Sanchez v. District Court,* 624 P.2d 1314 (Colo.1981); *Stull v. District Court,* 135 Colo. 86, 308 P.2d 1006 (1957); *Shore v. District Court,* 127 Colo. 487, 258 P.2d 485 (1953). Issues in this case concerning the nature of sentencing are of sufficient public importance to warrant consideration by this court in the exercise of its original jurisdiction.

■ Nevertheless, questions regarding the scope of our jurisdiction remain. In general, sentencing is a matter of discretion with the trial court. But that discretion is not completely unfettered. A sentence which is beyond the statutory authority of the court is illegal. *See Hemphill v. District Court,* 197 Colo. 431, 593 P.2d 972 (1979); *see People ex rel. Gallagher v. District Court,* 632 P.2d 1009 (Colo.1981).

■ Although we have not addressed the specific question of whether a sentence can be reviewed if review might result in an increased sentence, other courts have permitted such review when the initial sentence is illegal.[5] *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *State v. Fry,* 61 Haw. 226, 602 P.2d 13 (1979); *State v. Thompson,* 88 Wash.2d 60, 558 P.2d 245 (1977); *United States v. McGarr,* 461 F.2d 1 (7th Cir.1972). Also, the correction of an illegal sentence is an extraordinary cause for which mandamus is available. *United States v. Ferri,* 686 F.2d 147 (3d Cir.1982); *People ex rel. Carey v. Bentivenga,* 83 Ill.2d 537, 48 Ill. Dec. 228, 416 N.E.2d 259 (1981); *United States v. Jackson,* 550 F.2d 830 (2d Cir.

1977); *United States v. Norton,* 539 F.2d 1082 (5th Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1975); *State v. Pringle,* 83 Wash.2d 188, 517 P.2d 192 (1973); *McGarr,* 461 F.2d at 5; *United States v. Pregerson,* 448 F.2d 404 (9th Cir. 1971); *see Ex Parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) (mandamus issued to set aside an unauthorized order designed to suspend permanently execution of a sentence). The Fifth Circuit stated that "an appellate court has the duty, with minimal margin for judgment, to correct an illegal sentence" and "petitions to correct illegal sentences by mandamus have routinely been granted." *United States v. Denson,* 603 F.2d 1143, 1147–48 (5th Cir.1979). We conclude that this court does have jurisdiction to review defendant's sentence if the trial court's sentence was illegal.

## III.

■ Defining crimes and prescribing punishments are legislative prerogatives. A court may not impose a sentence that is inconsistent with the terms specified by statutes. *People v. Hinchman,* 196 Colo. 526, 589 P.2d 917, *cert. denied,* 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979). Section 16–11–101, C.R.S.1973 (1978 Repl.Vol. 8) (1982 Cum.Supp.) authorizes the trial court to grant probation, unless the defendant is ineligible for probation, *or* to impose a sentence of imprisonment for a definite period of time.

During the June 22 sentencing hearing, the respondent trial judge stated:

"I must consider along with rehabilitation the concept of punishment as well as deterrence to other members of society as well as to the Defendant; and the Court, in light of all of the facts known to it in this case, is giving that factor a great deal of consideration and is rejecting the concept as to outright probation.

. . . .

**5.** *Righi v. People,* 145 Colo. 457, 359 P.2d 656 (1961), held that a court does not have jurisdiction to increase a sentence after an accused has begun serving it. But the increased sentence in

*Righi* was not a correction of a prior illegal sentence. *See* Crim.P. 35(a) "the court may correct an illegal sentence at any time . . . ."

"[T]he Court finds that having considered probation as such, the Court is going to discard that concept.

"The Court is going to enter a judgment of conviction. I'm going to impose a sentence to the Department of Corrections for a period of four years with one year of parole....

"The Court is going to suspend the sentence to the Department of Corrections and I'm going to place the Defendant under the supervision of the probation department with the following condition. That under 16–11–212, the Defendant be placed in the Denver County Jail under the work-release program for a flat period of time of two years; that during this period of time he also have the condition that he continue with and have the benefit of his therapy with his therapist, Michael Lindsay, until such time as Mr. Lindsay would discharge him from therapy; that during that period of time he not own, possess, carry in any way any weapon whether it be a firearm, a knife, or any other weapon of any sort."

■ A trial court, having rejected probation, cannot circumvent legislative dictates by sentencing within prescribed parameters, suspending the sentence, and then imposing conditions which are authorized only in connection with probation. Section 16–11–212, C.R.S.1973 (1978 Repl. Vol. 8) (1982 Cum.Supp.); *see Hinchman,* 196 Colo. at 531, 589 P.2d at 920; *see People ex. rel. Gallagher v. District Court,* 197 Colo. 481, 593 P.2d 1372 (1979). Here, the combination of a sentence for a definite period with a work-release program which is only permitted as a condition of probation results in an illegal sentence.[6]

■ In *People v. Ray,* 192 Colo. 391, 560 P.2d 74 (1977), a divided court held that the probationary power of sentencing courts authorized the granting of a deferred judgment before such a procedure was authorized by statute. In *People v. Henderson,* 196 Colo. 441, 586 P.2d 229 (1978), we held that section 16–11–101, *et seq.,* C.R.S.1973 (1976 Supp.) did not limit the power of trial courts to suspend sentences. We now overrule *Henderson* and *Ray* to the extent that they may be read contrary to the views expressed in this opinion. In light of the important need for stability in sentencing and because issues of sentencing illegality are not essentially related to the truth-finding function of a criminal trial, this opinion shall have prospective effect only. *People in the Interest of C.A.K.,* 652 P.2d 603 (Colo.1982); *People v. Hardin,* 199 Colo. 229, 607 P.2d 1291 (1980).

■ At the June 29 sentencing hearing, the respondent said that he was "prevented by the double jeopardy clause ... from altering the sentence itself"[7] and he ordered, "pursuant to the sentence originally imposed, that [defendant] be placed in the custody of ... the Department of Corrections ... for a period of four years plus one year of parole." The sentence that defendant received on June 29 is inextricably intertwined with the illegal June 22 sentence. Therefore, defendant has not received a legal sentence.

IV.

■ The defendant argues that vacating his sentence and remanding for resentencing would violate his constitutional right to be free from double jeopardy because of the possibility that his sentence might be increased. We do not agree.

---

**6.** Prior to 1972, sentencing judges had "power to suspend the imposition or execution of a sentence" when imposing probation. This was conceptually necessary because probation was not expressly within statutory sentencing alternatives. Therefore, to grant probation a sentencing court had to suspend imposition or execution of the statutorily mandated sentence. In 1972, the legislature included probation within its statutory sentencing alternatives and

removed sentencing courts' power to suspend sentences in connection with grants of probation. C.R.S.1963, 39–16–6; Colo.Sess.Laws 1972, ch. 44, 39–11–102 *et seq.*

**7.** As explained in part IV, *infra,* respondent could have resentenced defendant without violating the double jeopardy clauses of the United States and Colorado Constitutions.

The tripartite protection afforded by the double jeopardy clause can be summarized as follows:

"It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted.)

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *People v. Lowe,* 660 P.2d 1261, 1266 (Colo. 1983).

In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the United States Supreme Court drew a distinction between the double jeopardy ramifications of an acquittal and of a pronouncement of sentence. Acquittals receive much greater protection. Without double jeopardy protections for acquittals, the chances of an erroneous finding of guilt are increased. The ordeal of retrial on the basic issue of guilt or innocence is more burdensome than anxieties about the length of one's sentence.

Our holding on the double jeopardy claim is in accord with other decisions of the United States Supreme Court and the United States Courts of Appeals. In *Bozza v. United States,* 330 U.S. 160, 167, 67 S.Ct. 645, 649, 91 L.Ed. 818 (1947), the trial court failed to impose the mandatory sentence required by statute. Later, it corrected its mistake. The defendant claimed that the court's actions constituted double jeopardy. The Court said: "the court 'only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender.' ... It did not twice put petitioner in jeopardy for the same offense." The Second, Fifth, and Tenth Circuits have also held that when an original sentence is illegal, resentencing does not constitute double jeopardy under the United States Constitution even if the subsequent sentence is long-

er than the original, and even though the defendant has begun serving the original sentence. *United States v. Romero,* 642 F.2d 392 (10th Cir.1981) (illegal sentence of indeterminate to seven years can be corrected by increasing it to the statutorily prescribed sentence of indeterminate to ten years); *Stuckey v. Stynchcombe,* 614 F.2d 75 (5th Cir.1980) (five-year probated sentence providing for incarceration during weekends for six months was below the statutory minimum; a resentence of eight years did not implicate double jeopardy); *Garcia v. United States,* 492 F.2d 395 (10th Cir.1974) (the defendant's sentence was invalid because it did not contain a statutorily mandated parole term; it could be increased by adding the parole term because the rule that a sentence cannot be increased after the defendant begins to serve it is applicable only when the sentence is legal); *United States ex rel. Ferrari v. Henderson,* 474 F.2d 510 (2d Cir.), *cert. denied,* 414 U.S. 843, 94 S.Ct. 102, 38 L.Ed.2d 81 (1973).

As the Court recognized in *DiFrancesco,* limiting the reach of double jeopardy in sentencing serves important public policy interests. Sentencing is one of the areas most in need of reform. *DiFrancesco,* 449 U.S. at 142, 101 S.Ct. at 440. Narrowly interpreting the effect of double jeopardy in sentencing protects society's legitimate interest in adequate sentences for convicted criminals and in the overall uniformity of sentences imposed on similarly situated violators. Granting defendants a right to benefit from illegal sentences serves no sound public policy.[8]

## V.

Because we find that the respondent court imposed an illegal sentence, we do not deem it necessary to consider the People's request that we impose sentence in the presumptive range or in the "extraordinary aggravating circumstances" range.[9]

---

**8.** *See* R. Stern, *Government Appeals of Sentences: A Constitutional Response to Arbitrary and Unreasonable Sentences,* 18 Am.Crim.L. Rev. 51, 89 (1980).

**9.** We note that as part of the plea bargain, the People agreed to ask for a sentence of not more than ten years. The People are now in no position to request a sentence which exceeds

Also, since defendant's sentence contains an illegal mix of incarceration and probation and must be vacated, it is unnecessary to consider the propriety of the June 29 resentencing raised by the defendant in Case No. 83SA266. The causes are remanded for further proceedings in accordance with the views expressed in this opinion.

Rule made absolute in both cases.

DUBOFSKY, J., does not participate.

ten years unless the defendant is given the opportunity to withdraw his plea of guilty. *See*

*Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).