The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Connell Jane WATKINS, Defendant–
Appellant.

No. 01CA1313.

Colorado Court of Appeals,
Div. I.

Aug. 28, 2003.

Certiorari Denied Jan. 26, 2004.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Craig L. Truman, P.C., Craig L. Truman, Denver, Colorado; Burke & Neuwirth, P.C., Dean Neuwirth, Denver, Colorado, for Defendant–Appellant.

Linda A. Rosa, Pro Se Amicus Curiae.

Larry W. Sarner, Pro Se Amicus Curiae.

Jean Mercer, Ph.D., Pro Se Amicus Curiae.

Opinion by Judge KAPELKE.

Defendant, Connell Jane Watkins, appeals the judgment of conviction entered upon a jury verdict finding her guilty of reckless child abuse resulting in death. She also appeals the sentence imposed. We affirm.

This case arises from the death of a ten-year-old girl while undergoing a "rebirthing" therapy session at the clinic of defendant, a psychotherapist. According to evidence at trial, the child had severe emotional and mental problems and had been in six foster homes by the age of five. She was adopted when she was seven.

Following the adoption, the child's emotional and behavioral problems became increasingly severe. The adoptive mother consulted various mental health professionals, and she and her daughter entered into weekly therapy sessions with a social worker. None of the courses of treatment or therapy proved successful, and, according to the mother, the child remained defiant and negative at home. The mother later attended two workshops on reactive attachment disorder and came to believe that the symptoms of that disorder matched those of her child.

Later, the child's mother attended a conference that addressed reactive attachment disorder. At the conference, she was referred by a psychologist to two other psychologists who practiced in North Carolina, not far from where the mother and her daughter lived. Thereafter, the child began weekly therapy for attachment disorder.

The therapy sessions included a "provocative" treatment known as "holding therapy." During the sessions, the psychologists would sit next to each other on a couch and lay the child across their laps, with one of the child's arms being behind the therapist nearest her head. The goal was to "activate" repressed emotions within the child and have her vent her anger over such issues as her abandonment, separation from her brother and sister, and adoption.

The mother testified that during the sessions the child would attempt to sit up and hit the therapists or spit at them. She also stated, however, that the child seemed more relaxed and easier to deal with after the sessions.

In February 2000, the child's mother met with the mothers of three other children who had participated with defendant in intensive therapy for attachment disorder. They praised defendant and her program. There-

after, the child's mother enrolled the child in a two-week intensive session with defendant. During that time, the child and her mother participated in intense and often confrontational therapy with defendant and her associates. The therapy sessions were recorded on videotape.

Among other treatments, defendant conducted daily sessions of holding therapy with the child. According to the mother, the holding therapy performed by defendant and her associates was similar to that which the child had received previously, but defendant was louder and more confrontational. She bounced the child on her lap, held her face to maintain eye contact, and restrained her more securely.

In the second week, defendant and her associates conducted rebirthing therapy, which has been described as a "symbolic rebirth." They had the child lie in a fetal position on the floor and wrapped her in a flannel sheet. One of defendant's associates held the ends of the sheet twisted together above the child's head. The child was then surrounded by and covered with large pillows. Four adults, whose combined weight was over six hundred pounds, then pushed against the pillows to simulate labor contractions. The child was to push herself through the sheet above her head where the corners were twisted together and thus be "reborn" to her adoptive mother, who sat near the opening.

The rebirthing therapy session lasted for over an hour. During that time, the child repeatedly said that she could not breathe, that she needed air, that she was going to throw up, and that she was being squashed. She asked for help several times and also asked for directions about what she was supposed to do. Believing that the child was being manipulative, however, defendant and her associates ignored the pleas and continued with the procedure.

The child eventually stopped moving or speaking. Defendant and her associates thought she was asleep. When they removed the blanket, however, they discovered that she was no longer breathing. She was then taken to a hospital, where she was declared brain dead. The cause of death was determined to be suffocation.

Defendant was charged with and convicted of reckless child abuse resulting in death, § 18–6–401(1)(a) and (7)(a)(I), C.R.S.2002, and other offenses not relevant here. She was sentenced to a mandatory minimum term of sixteen years and to concurrent lesser terms on the remaining counts. In this appeal, she challenges only her conviction of reckless child abuse resulting in death.

## I. Exclusion of Proffered Defense Testimony

Defendant contends that the trial court erred in precluding her from presenting evidence that her therapy for children with attachment disorder was effective. We disagree.

All relevant evidence is admissible, unless otherwise provided by constitution, statute, or rule. CRE 402; *People v. Rath*, 44 P.3d 1033 (Colo.2002). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

Trial courts have broad discretion in balancing the probative value of the evidence against the danger of unfair prejudice and the other considerations recognized in CRE 403. *People v. Ibarra*, 849 P.2d 33 (Colo.1993). A trial court's decision to exclude evidence under CRE 403 will not be disturbed on review in the absence of an abuse of that discretion. *People v. Gibbens*, 905 P.2d 604 (Colo.1995); *King v. People*, 785 P.2d 596 (Colo.1990). A reviewing court may properly conclude that such an abuse of discretion has occurred "if, based on the particular circumstances confronting the court, the court's evidentiary ruling was manifestly ar-

bitrary, unreasonable, or unfair." *King v. People, supra,* 785 P.2d at 603.

Defendant endorsed witnesses and provided offers of proof indicating that they would testify that their children had had symptoms similar to those of the child here and that defendant's attachment therapy had produced positive results. The prosecution filed a motion in limine to exclude certain aspects of the proffered testimony, arguing that it would constitute inadmissible character evidence and also that it would distract the jury from the relevant inquiry. The court deferred ruling on the motion until after the presentation of the prosecution's case-in-chief.

At trial, the prosecution played for the jury the videotapes of the child's therapy sessions with defendant and her associates, and a detective provided a contemporaneous narration describing what was being shown on the videotapes. The testimony placed emphasis on the child's pleas for help during both the holding therapy and rebirthing therapy sessions.

Following the detective's testimony, the prosecution called three expert witnesses who opined that the holding therapy as depicted on the videotapes was inappropriate. In describing the therapy, they used such terms as "brainwashing," "cruel," "shocking," and "torture," and one of the witnesses characterized holding therapy as a "pseudo treatment" done by "the fringe elements in the mental health profession."

At the close of the prosecution's case-in-chief, the trial court held a hearing on the prosecution's motion to exclude defense witness testimony.

Defense counsel argued that the proffered testimony as to the effectiveness of the therapy was admissible to rebut the testimony of the prosecution's witnesses and also as evidence of habit or routine practice permitted under CRE 406. Counsel further argued that the evidence was admissible because the offense of reckless child abuse resulting in death requires proof of a subjective awareness of a substantial and unjustifiable risk of death from defendant's conduct, and the jury should be able to draw inferences from de-

fendant's prior successful experiences in determining whether she was aware of the risk.

The prosecution stated that it had no objection to testimony about defendant's safety practices during any treatment sessions or to testimony as to what had happened at previous rebirthing sessions. However, it objected to testimony concerning the specific details about other clients of defendant, personal opinions about defendant's effectiveness or skillfulness as a therapist, and opinions as to the effectiveness of holding therapy.

The court ruled that the testimony constituted evidence of specific instances of conduct, which was thus not admissible to show character. It also rejected defendant's argument that the testimony was admissible to show habit. In addition, the court found that the evidence was irrelevant and might lead to confusion on the part of the jury by opening the door for cross-examination of the witnesses regarding such irrelevant issues as the condition and treatment of their children at different times and locations.

The court limited its ruling, however, to exclude only testimony concerning *holding therapy.* The court stated that it would allow the witnesses to testify regarding prior rebirthing sessions, the general nature of their children's psychiatric problems, whether and when they sought treatment from defendant, and whether they had attended one of defendant's intensive therapy sessions. They were also allowed to state their general opinion "as to whether [defendant] had a character for being safe in the treatment of her children."

As defendant acknowledged in her opening brief on appeal, she was allowed to present testimony about other instances of rebirthing, opinion testimony about whether holding therapy was safe, testimony of another social worker who performs holding therapy about her experiences with it, and opinion testimony of an expert, who opined that holding therapy is effective.

In addition, the court allowed testimony by the child's mother that the parents of other children treated by defendant had praised the efficacy of her therapy. Defendant herself testified about the effectiveness or suc-

cess of her prior holding and rebirthing therapy with other children.

## A. Relevance

The determinative issues at trial were whether defendant acted recklessly in performing the fatal rebirthing session and whether the child's death resulted from such recklessness. To sustain its burden of proving that defendant acted recklessly, the prosecution had to establish that she had a subjective awareness of a substantial and unjustifiable risk of death as a result of her conduct. The trier of fact could have inferred defendant's awareness or lack of awareness of the risk from circumstances such as defendant's prior experiences with rebirthing therapy. *See People v. Hall*, 999 P.2d 207 (Colo.2000).

Thus, evidence of prior therapy sessions with other patients would be relevant if it assisted the jury in determining what defendant knew about the risks at the time of the child's rebirthing therapy session. This evidence could include accounts of events that transpired during prior rebirthing sessions and of defendant's prior experiences with children's complaints during therapy sessions.

The court allowed testimony of witnesses about the safety and effectiveness of rebirthing therapy, which was the procedure during which the child died. Further, the court allowed testimony concerning the safety aspects of defendant's prior treatment of the witnesses' children. It was only the proffered testimony concerning of the effectiveness of the holding therapy that the court excluded. We agree with the trial court that the effectiveness of that type of therapy on prior occasions was not relevant to the issue whether defendant acted recklessly in conducting the rebirthing therapy at issue here. Nor was defendant's knowledge that her prior holding therapy experience with other clients had been effective relevant to show her state of mind as to the safety and efficacy of the rebirthing procedure that led to the child's death.

## B. CRE 403

Even if the evidence were deemed to have some minimal relevance, the trial court properly excluded it under CRE 403. The court determined that the excluded testimony could confuse the issues, mislead the jury, and open the door to cross-examination concerning such collateral issues as the specific disorders or symptoms of other children treated by defendant and the nature and details of their courses of treatment.

A court may exclude relevant evidence that might confuse the issues or mislead the jury "because it might raise a side issue that would distract the jury from the important issues." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 403.05[1], at 403–52.6 (2d ed.2003); *see also People v. Walker*, 666 P.2d 113, 122 (Colo.1983)(upholding trial court's limiting of cross-examination by defendant under CRE 403 and noting, "The ruling of the trial court properly prevented the sideshow from taking over the circus."); *People v. Flowers*, 644 P.2d 916, 919 (Colo.1982)(upholding exclusion of defendant's evidence of nine other sexual assaults which was proffered to show that someone else had committed the charged offense, and agreeing with the prosecution that such testimony would tend to confuse the issues and unduly delay the trial).

Here, the proffered testimony regarding the effectiveness of defendant's holding therapy with other clients could have led to mini-trials concerning the medical conditions and courses of treatment of each of those children. The trial court acted well within its discretion in concluding that such evidence could distract the jury from its mission of deciding the critical issues of whether defendant's actions in the rebirthing therapy were reckless and whether they caused the child's death.

The fact that the witnesses would have testified that their children had also cried out and sought help during therapy does not alter our conclusion. Such testimony would have been essentially cumulative of other testimony permitted by the court. The court allowed the child's mother to testify that the child had made similar statements and complaints during her previous holding therapy

with others, and defendant herself testified that it was common for children to cry out and claim they were unable to breathe during holding therapy and rebirthing therapy sessions.

Under these circumstances, we conclude that the court did not abuse its discretion in excluding the proffered evidence under CRE 403.

## C. Due Process

■ While a defendant has a due process right to present evidence in his or her defense, the right is not absolute, and the trial court must exercise its authority to accommodate all legitimate interests in the criminal trial process. *People v. Collie*, 995 P.2d 765 (Colo.App.1999)(citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)); *see also People v. Pronovost*, 773 P.2d 555, 558–59 n. 4 (Colo.1989).

■ Here, the trial court granted defendant wide latitude to present evidence regarding the safety and effectiveness of the rebirthing therapy, and defendant, the child's mother, and an expert witness were all allowed to testify as to both the safety and the effectiveness of holding therapy. .

As discussed, the court also allowed testimony concerning defendant's experience with children's complaints and outcries during therapy. Further, a psychologist involved in prior rebirthings was permitted to testify that she had ignored children's claims that they could not breathe during rebirthing therapy because she knew such responses were often a result of the children's emotional conditions and also because she knew they were in fact able to breathe. In addition, the child's mother testified that during the holding therapy her daughter had screamed, struggled, and cried out that she was unable to breathe.

Defendant was thus able to argue that, under the circumstances, her own response to the child's outcries during the rebirthing therapy was not reckless.

Accordingly, we reject defendant's contention that the trial court's ruling violated her due process right to present a defense.

## II. Equal Protection

Defendant next contends that her mandatory minimum sentence of sixteen years for reckless child abuse resulting in death violates her right to equal protection of the law under the circumstances here. Specifically, she argues that § 18–1.3–406(1)(a), C.R.S. 2002 (previously codified at § 16–11–309(1)(a)), "allows mandatory sentences for crimes of violence to be reduced below the mandatory minimum level, but that provision is not available to [defendant] because reckless child abuse resulting in death under section 18–6–401 is not defined as a crime of violence under section [18–1.3–406]."

■ Because defendant did not raise this constitutional claim in the trial court, we decline to address it here. *See People v. Cagle*, 751 P.2d 614, 619 (Colo.1988)("It is axiomatic that this court will not consider constitutional issues raised for the first time on appeal.") *See also People v. Lesney*, 855 P.2d 1364, 1366 (Colo.1993)(rejecting equal protection and due process claims as not raised in trial court); *People v. Balkey*, 53 P.3d 788, 793–94 (Colo.App.2002)(declining to address contention that reckless homicide statute is unconstitutional because it proscribes same conduct as misdemeanor offense of careless driving resulting in death, where issue not raised in trial court).

■ Defendant argues, however, that her equal protection argument may be raised for the first time on appeal because it challenges the legality of the sentence and is therefore jurisdictional. We reject the contention.

In asserting this argument, defendant relies on *People v. Hinchman*, 196 Colo. 526, 589 P.2d 917 (1978), and its progeny. In *Hinchman*, the supreme court held that the trial court lacked jurisdiction to suspend a portion of the defendant's sentence where the effect of the suspension was to reduce the sentence below the statutory minimum. Because it was jurisdictional in nature, the court held, the issue of the legality of the sentence could be raised at any time.

The principle enunciated in *Hinchman* has since been applied in several reported opinions. Generally, however, the illegality of sentence argument has been deemed jurisdictional only where it implicated the constitutional or statutory *authority* of the trial

court to impose the sentence. *See, e.g., People v. Torkelson,* 971 P.2d 660, 661 (Colo.App.1998)(allowing defendant to contend for first time on appeal that sentence was illegal because it was imposed by county judge lacking lawful authority); *People v. Anaya,* 894 P.2d 28, 31 (Colo.App.1994)("A sentence that is beyond the statutory authority of the court is illegal. When a court imposes a sentence that is illegal, such as one that is in excess of its jurisdiction, the People may raise the issue for the first time on appeal."); *People v. Perkins,* 676 P.2d 711, 713 (Colo.App.1983)("The courts have no jurisdiction to sentence inconsistently with a minimum and maximum term specified by statute."); *see also People v. Green,* 36 P.3d 125, 126 (Colo.App.2001)("Generally, an illegal sentence is one that is inconsistent with the terms specified by statutes.").

Here, unlike in *Hinchman* and the other cited cases, the trial court possessed both the jurisdiction to act and the statutory authority to impose the sentence, which was within the statutory range. Under these circumstances, defendant's equal protection argument is not jurisdictional, and, because she did not raise it in the trial court, we will not address it here. *See People v. Cagle, supra.*

The judgment and sentence are affirmed.

Judge TAUBMAN and Judge LOEB concur.