## No. 27674

### The People of the State of Colorado v. John Douglas Lake
(580 P.2d 788)

Decided June 5, 1978.                                    Rehearing denied July 24, 1978.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, James S. Russell, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Carol L. Gerstl, Deputy, for defendant-appellant.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The defendant, John Douglas Lake, was convicted in June 1976 of aggravated robbery and aggravated robbery of drugs. Sections 18-4-302 and 18-4-303, C.R.S. 1973. He was subsequently sentenced to life imprisonment under the provisions of the Colorado Habitual Criminal Statute. Section 16-13-101(2), C.R.S. 1973. Defendant does not challenge his conviction for aggravated robbery. He contends here that his conviction for aggravated robbery of drugs is not supported by the evidence and that the habitual criminal statute was improperly applied. We affirm the decision of the trial court.

On April 12, 1976, a man entered the Redlands Drugstore in Grand Junction and made an inquiry regarding a prescription. The only person in the store was the owner, Robert W. Holmes, a registered pharmacist. After a brief discussion, the man pointed a gun at Holmes and demanded all of the "narcotic drugs" in the store. Holmes placed two trays of drugs in a green mesh bag handed him by the robber.

The man demanded all of Holmes' cash and was given $56. Holmes was ordered to the back of the store where his hands were tied behind his back. He was instructed not to move. His assailant then backed out of the store and fled by motorcycle.

Defendant was arrested a few hours later in an area some two and a half miles from the store. The drugs taken in the robbery as well as various items of clothing were found in the vicinity. Holmes later identified the clothing as that worn by the robber; he also selected the defendant's picture from a photographic lineup and identified the defendant at trial.

I.

■ Aggravated robbery of drugs is defined as follows:

"A person who takes any *narcotic* drug from any pharmacy or other place having lawful possession thereof under the aggravating circumstances defined in section 18-4-302 is guilty of aggravated robbery of drugs." (emphasis added.) Section 18-4-303, C.R.S. 1973.

An essential element of this crime is proof that the drug taken is, in fact, a narcotic drug. This element, as with every material element of crime, must be proven beyond a reasonable doubt. Defendant contends that, in the

absence of some sort of independent chemical analysis, the proof presented in this case falls short of this standard. We disagree.

At the trial, the drugs allegedly stolen in the robbery were introduced through the testimony of the victim. Holmes testified that he had his own letter code and that those exhibits which carried either his code or the code of the person from whom he bought the pharmacy were evidence to him that they were from his store. Over objection, Holmes then indicated what drug was contained in certain bottles and packages, randomly selected by the prosecutor. The basis for this testimony was Holmes' experience in dispensing drugs and his interpretation of the labels affixed to the containers. The prosecution introduced no evidence of any chemical analysis performed with respect to these exhibits.

■ We cannot accept defendant's argument that chemical testing is necessary in all cases in order to prove the items taken were in fact narcotic drugs. While the better practice would have been to subject the evidence to chemical analysis, the proof presented in this case was sufficient to submit the case to the jury. The victim of the crime, a qualified pharmacist, testified as to the items taken from the store, his system of labeling and identifying the substances in question, and the meaning of specific labels found on various exhibits. He also identified as narcotics the substances within the various containers based on his knowledge of the labels, the contents, and his experience as a pharmacist. From this evidence, the jury could conclude that the substances in question were in fact narcotic drugs.[1]

## II.

Defendant next challenges his sentencing pursuant to the so-called "big" habitual criminal statute:

"Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony, shall be adjudged an habitual criminal and shall be punished by imprisonment in the state penitentiary for the term of his or her natural life. . . ." Section 16-13-101(2), C.R.S. 1973. The three prior "felony" convictions which the trial court relied upon in invoking this statute were "larceny from a motor vehicle" (section 40-5-11(2), C.R.S. '53), "fictitious check" (C.R.S. 1963, 40-6-8) and "sexual assault on a child" (1971 Perm. Supp., C.R.S. 1963, 40-3-408). This last conviction was obtained as the result of a plea bargain arising from a charge of statutory rape.

---

[1] While there appears to have been some confusion as to the number or lettering of certain exhibits, our review of the record indicates that this confusion was minimal and related to only a few of the many exhibits identified by Mr. Holmes.

Defendant asserts three distinct constitutional infirmities in the application of the habitual criminal statute to him. We shall consider each challenge separately

## A.

At the time defendant entered his plea of guilty to sexual assault on a child, the statute read:

"(1) Any person who subjects another not his spouse to any sexual contact commits sexual assault on a child if the other person is *less than sixteen years old* and the offender is at least eighteen years of age." (Emphasis added.) 1971 Perm. Supp., C.R.S. 1963, 40-3-408.

The "other person" in this case was fifteen years old at the time of the commission of the offense.

In 1975, the crime of sexual assault on a child was amended so as to apply only to sexual contact on a child less than fifteen years of age. Section 18-3-405, C.R.S. 1973 (1976 Supp.). Defendant argues that but for the fact his conviction on the sexual assault charge is final, he would be entitled to the benefit resulting from this change in law pursuant to the terms of the postconviction relief statute. Section 18-1-410(1)(f), C.R.S. 1973 (1976 Supp.). He therefore asserts that denying him the benefit of this change in law when applying the habitual criminal statute, violates his rights to equal protection of the laws.[2] We do not agree.

■ Before directing our attention to the merits of defendant's argument, we must address a preliminary question raised by the People concerning the jurisdiction of the courts to "review" a conviction once it has become final. It is true that once a conviction has become final, the trial court has no jurisdiction to review the sentence imposed with respect to that particular conviction. *See,* section 18-1-410(1)(f), C.R.S. 1973, as amended, and *People v. Arellano,* 185 Colo. 280, 524 P.2d 305 (1974). However, when that final conviction becomes the basis for imposition of a life sentence pursuant to the provisions of the habitual criminal statute, this court has jurisdiction to determine whether that conviction may validly be considered under the terms of the recidivist statute.[3] *See Smalley v. People,* 134 Colo. 360, 304 P.2d 902 (1956).

■ Acting within this narrow jurisdictional limit, we hold that defendant's conviction was properly considered as a predicate felony for purposes of the habitual criminal statute. The error in defendant's equal

---

[2] In *People v. Thomas,* 185 Colo. 395, 525 P.2d 1136, 1137 (1974), we noted that, "[t]he legislature intended the changed legal standards to apply wherever constitutionally permissible."

[3] Defendant argues that since we have jurisdiction to determine what is and what is not a predicate felony within the meaning of the habitual criminal statute, it is "constitutionally permissible" to give him the benefit of the change in law when applying the habitual criminal statute. Thus, he asserts, the finality of his conviction for sexual assault is immaterial in this context.

protection analysis is in his interpretation of the postconviction relief statute. Contrary to defendant's assertion, the postconviction relief statute is not directed toward conferring any benefit associated with a change in law of the nature in question here. Rather, in *People v. Marlott,* 191 Colo. 304, 552 P.2d 491 (1976), we discussed the scope of the postconviction relief statute in the following terms:

"This court has previously held that a defendant whose conviction has not become final is entitled under section 18-1-410(1)(f), C.R.S. 1973 to the benefits of amendatory legislation mitigating the penalty for the *same* crime. [citations omitted] In such a case, the change in legal standards of punishment can be readily perceived for purposes of modifying the earlier sentence.

"However, where, as here, the new Criminal Code changes the elements of the crimes, [footnote omitted] there can be no measure by which to determine whether the standards of punishment have increased or decreased because the crimes are no longer the same. It was clearly not the legislative intent behind section 18-1-410(1)(f), C.R.S. 1973 to permit the modification of sentences where the earlier crimes have been subsequently repealed and substantially new crimes have been enacted in their place. Were it otherwise, this court could only speculate as to the new crimes which defendant may have been charged with and convicted of in order to determine if his sentence should be reduced." (Emphasis in original.) 552 P.2d at 494.

■ In the case at bar, certain elements of the crime of sexual assault on a child were changed by the legislature in 1975. The crime of sexual assault on a child was not abolished. While the penalties changed, comparison is difficult.[4]

*In this context,* the postconviction relief statute has no effect on the status of a felony conviction. Defendant, therefore, would not be entitled to any different treatment under the terms of the postconviction relief statute, than that afforded him here in the application of the habitual criminal statute.

■ We note that this reading of the postconviction relief statute is consistent with the intent of the legislature when it drafted the habitual criminal statute. The language of the habitual criminal statute indicates that it embraces every felony whether committed here or in a foreign state. As this court said in *Burns v. People,* 148 Colo. 245, 365 P.2d 698 (1961):

---

[4] Sexual assault on a child was reclassified from a class 5 felony to a class 4 felony. Under the new penalty provisions, however, the new effect is that the minimum possible sentence has been decreased, while the maximum sentence has increased. Both the minimum and maximum fines have also increased. *See,* section 18-1-105, C.R.S. 1973 (1976 Supp.).

"[I]t makes no difference that the crime is not a felony in Colorado if it is a felony where the conviction was had. A reading of the statute admits of no other interpretation." 148 Colo. at 252, 365 P.2d at 701.

A clear implication of the statutory language is that the *time* as well as the *place* of commission of the crime should determine its status as a felony. *See, State v. Darrah,* 76 N.M. 671, 417 P.2d 805 (1966).

Recently the New York Court of Appeals had an opportunity to consider the constitutionality of an habitual criminal statute which permitted consideration of felony convictions from foreign states despite the fact that the same acts would not constitute felonies in New York. The court there stated:

"The possible disparity of treatment between prior New York offenders vis-a-vis prior out-of-state offenders does not vitiate the legislative decision that an individual who has previously elected to violate the criminal standards of the society in which he was found should be treated as an habitual offender. This rationale underlies provisions in the Model Penal Code (§7.05, subd. [1]) and the American Bar Association Standards Relating to Sentencing Alternatives and Procedures (§3.3, subd. [b], par. [i]) from which the New York statute is derived. And, as noted, the well-founded purpose of providing for increased punishment of those who actually create the problem for themselves by persistent violations of penal statutes is to combat recidivism by increased punishment, not for the previous out-of-State offense, but rather for the commission of the subsequent offense." *People v. Parker,* 41 N.Y.2d 21, 359 N.E.2d 348, 351 (1976).

*Cf., Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). (Supreme Court upheld against an equal protection challenge a provision of the Narcotic Addict Rehabilitation Act, 18 U.S.C. §§4251-4255, which excludes from rehabilitation commitment addicts with two or more prior felony convictions.)

■ This language is equally applicable in the context of this case. The legislature has rationally determined that an individual who has previously elected to violate the criminal standards, *then present,* in the society in which he was found should be treated as an habitual offender.

As we interpret the habitual criminal statute and the postconviction relief statute, there is no inherent conflict. In this light, defendant's equal protection argument must fail.

### B.

■ Defendant next argues that use of his twelve-year-old conviction for larceny from a motor vehicle in his habitual criminal proceeding violates equal protection since the same conviction, being more than ten years old, could not be used against him in a so-called "little" habitual criminal proceeding. *See,* section 16-13-101(1), C.R.S. 1973 (1976 Supp.). We do not agree.

The purpose of the habitual criminal statute is to punish more severely those who show a propensity toward repeated criminal acts. In making its determination regarding which individuals are truly incorrigible recidivists, the legislature may reasonably conclude that the number of criminal acts as well as the length of time over which the acts occur, are pertinent factors. In this state, the legislature has determined that the commission of three felonies within a ten-year period or the commission of four felonies regardless of time, should result in increased penalties; and that the latter should be more severely treated than the former. While there may be disagreement as to how the factors mentioned relate to the propensity to commit criminal acts, we cannot say that the legislature has acted unreasonably in its consideration of these factors.

The legislative classification attacked by defendant is reasonable in light of the purpose to be attained and, thus, does not run afoul of equal protection principles.

### C.

Finally, defendant asserts that his life sentence under the habitual criminal statute is so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment. This court has previously considered Eighth Amendment challenges to application of the habitual criminal statute and has consistently rejected them:

"Appellant argues further, however, that the imposition of the life sentence, with respect to him, is excessively harsh, and hence violates the Eighth Amendment. This argument has no merit. The habitual criminal act has been specifically upheld in spite of its increased penalty provisions. *Bernard v. Tinsley,* 144 Colo. 244, 355 P.2d 1098; *Vigil V. People,* 137 Colo. 161, 322 P.2d 320. The legislature may, within broad limits, decide the penalty for each offense. [citations omitted]." *People v. Bergstrom,* 190 Colo. 105, 544 P.2d 396, 398-399 (1975).

*See also, People v. Medina,* 193 Colo. 190, 564 P.2d 119 (1977); *People v. Renfrow,* 193 Colo. 131, 564 P.2d 411 (1977); *People v. Marquez,* 190 Colo. 255, 546 P.2d 482 (1976); *People v. Thomas,* 189 Colo. 490, 542 P.2d 387 (1975).

The mere fact that the penalty imposed is harsh, does not mean that it constitutes cruel and unusual punishment. *State v. Gibson,* 16 Wash. App. 119, 553 P.2d 131 (1976). Assessing all the relevant facts of this case, we cannot conclude that defendant's life sentence is so excessive as to violate Eighth Amendment principles related to cruel and unusual punishment.

The judgment of the district court is affirmed.

MR. JUSTICE CARRIGAN does not participate.