The PEOPLE of the State of Colorado, Petitioner,

v.

The DISTRICT COURT In and For the CITY AND COUNTY OF DENVER, State of Colorado, and J. Stephen Phillips, One of the Judges Thereof, Respondents.

No. 84SA498.

Supreme Court of Colorado, En Banc.

Nov. 18, 1985.

Rehearing Denied Jan. 13, 1986.

Norman S. Early, Jr., Dist. Atty., Denver, William Henry Kain, III, Asst. Dist. Atty., Jane E. Westbrook, Chief Deputy Dist. Atty., Grand Junction, for petitioner.

No appearance for respondents.

David F. Vela, Colo. State Public Defender, Michael J. Heher, Deputy State Public Defender Denver, for James Alvey Drake, intervenor.

QUINN, Chief Justice.

The People in this original proceeding seek relief in the nature of mandamus in connection with the respondent court's refusal to impose a life sentence on the defendant, James Alvey Drake, for habitual criminality pursuant to section 16–13–101(2), of the Habitual Criminal Act, §§ 16–13–101 to –103, 8 C.R.S. (1985 Supp.). Because the jury returned a not guilty verdict to the principal charge of murder in the first degree but a guilty verdict to the lesser nonincluded felony of accessory to murder in the first degree, the respondent court concluded that section 16–13–103(1), 8 C.R.S. (1985 Supp.), prohibited it from adjudicating and sentencing the defendant as a habitual criminal even though the jury, in the habitual criminal phase of the trial, returned verdicts finding that the defendant had previously been convicted of three felonies. We issued a rule directing the respondent court to show cause why it should not be required to sentence the defendant to life imprisonment as a habitual criminal, and we now make the rule absolute.

I.

On December 16, 1983, a young woman, the wife of the defendant's brother, Richard Drake, was found stabbed to death in her apartment in Grand Junction, Colorado. The investigation led to the arrest of Richard Drake and the defendant. On the morning of the crime the Grand Junction police received an anonymous phone call

from a man whose voice was later identified by experts as the defendant's, confessing that he had just stabbed a woman at the victim's address. The defendant was arrested later that afternoon in a Grand Junction motel. He had blood on his pants, shirt, and belt, and several items with the victim's blood on them were located in the defendant's room—a ski jacket, a ski mask, gloves, and towels. The key to the victim's apartment was also recovered from the defendant's pocket. A knife with the victim's blood on it was later found on the roof of a building between the victim's apartment and the motel, and the sheath to the knife was located under a rock in front of the defendant's room. Richard Drake ultimately confessed that he had hired the defendant to kill the victim and gave him a key to her apartment. Richard told the police that the defendant's call to the police was to establish an alibi for Richard, who was at work at the time the call was made.

The defendant was charged by information in the Mesa County District Court with murder in the first degree, § 18–3–102(1)(a), 8 C.R.S. (1978), and habitual criminality based on three prior felony convictions. Venue was changed from the Mesa County District Court to the Denver District Court where trial to a jury commenced on October 9, 1984. The defendant testified at trial that it was his brother Richard who had actually killed the victim and that he (the defendant) had only assisted Richard in hiding some bloody items and making the phone call to establish an alibi. At the conclusion of the evidence on the murder charge, the respondent court submitted the charge of murder in the first degree to the jury and also granted the defendant's request to give an instruction on the lesser nonincluded offense of accessory to murder in the first degree, § 18–8–105, 8 C.R.S.

(1978), a class 4 felony, and to submit a verdict form on that lesser nonincluded offense to the jury. The jury returned a not guilty verdict to the charge of murder in the first degree and a guilty verdict to the lesser nonincluded felony of accessory to murder.

 At the second phase of the trial, the respondent court, although not convinced that the Habitual Criminal Act was applicable to a lesser nonincluded felony, permitted the prosecution to submit evidence before the jury establishing that the defendant had previously been convicted of three felonies as alleged in the information.[1] The jury returned a verdict finding the defendant had previously been convicted of three felonies as charged. The respondent court, however, ruled that it was prohibited from adjudicating and sentencing the defendant as a habitual criminal. In the court's view, section 16–13–103(1), 8 C.R.S. (1985 Supp.), permitted such adjudication and sentence only when the jury returns a guilty verdict on the substantive felony alleged in the information and not when, as here, the jury finds the defendant guilty of a lesser nonincluded felony. The respondent court, therefore, refused to impose a life sentence as provided by section 16–13–101 (2), 8 C.R.S. (1985 Supp.), and instead sentenced the defendant to seven years and eight months, plus one year of parole, on his conviction for accessory to first degree murder. We conclude that when, as here, a guilty verdict to a lesser nonincluded felony is followed by a verdict finding that the defendant has previously been convicted of three prior felonies which were charged against him in separate counts of the criminal information, section 16–13–101(2), 8 C.R.S. (1985 Supp.), of the Habit-

---

1. The procedures for the trial of habitual criminal counts are set out in section 16–13–103, 8 C.R.S. (1985 Supp.), and include the following: the inclusion of the previous convictions in the indictment or information; the arraignment of the accused on the habitual criminal counts; an initial trial on the substantive charges; a second hearing before the same jury on the habitual criminal counts, if the accused has denied the

counts on arraignment and the jury has returned a guilty verdict on the substantive felony; and the requirement that the prosecution prove beyond a reasonable doubt the prior convictions in the second phase of the trial by evidence independent of any admissions by the accused to his prior convictions during the first phase of the trial.

ual Criminal Act mandates the imposition of a sentence to life imprisonment.

## II.

■ Before addressing the legality of the respondent court's sentence, we must first consider whether a remand for resentencing of the defendant would be barred by the constitutional prohibition against twice placing an accused in jeopardy for the same offense. U.S. Const. amends. VI and XIV; Colo. Const. art. II, § 18. We are satisfied that resentencing the defendant will not violate the double jeopardy provisions of either the United States or Colorado Constitution.

We addressed a similar issue in *People v. District Court of the City and County of Denver*, 673 P.2d 991 (Colo.1983). In that case the sentencing court, after the defendant had pled guilty to second degree murder, rejected a sentence to probation and imposed a four year sentence which the court then suspended on various conditions, including the defendant's participation in a work release program for two years. After execution of the mittimus and the defendant's commencement of the work release program, the sentencing court, on its own motion, revoked the suspended sentence. Expressing the belief that the prohibition against double jeopardy precluded any sentence in excess of the original four-year term, the court sentenced the defendant to the custody of the Department of Corrections for four years, plus one year of parole. We held that, because section 16–11–101(1)(a), 8 C.R.S. (1978), authorized a court either to grant probation if the de-

fendant was otherwise eligible or to impose a sentence to imprisonment for a definite term, the sentencing court acted illegally in circumventing legislative dictates "by sentencing within the prescribed parameters, suspending the sentence, and then imposing conditions which are authorized only in connection with probation." 673 P.2d at 996. Since the original four-year suspended sentence was illegal, we concluded that the defendant could be resentenced without violating the constitutional prohibitions against double jeopardy.

■ The message of our decision in *People v. District Court of the City and County of Denver*, is clear: an appellate court may correct an illegal sentence and remand the case for resentencing without violating the constitutional prohibition against double jeopardy. Remanding the case for resentencing under such circumstances only results in setting aside what the sentencing court lacked the authority to do in the first instance and in substituting therefor that which the law requires. *See United States v. Di Francesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Bozza v. United States*, 330 U.S. 160, 167, 67 S.Ct. 645, 649, 91 L.Ed. 818 (1947); *United States v. Romero*, 642 F.2d 392 (10th Cir.1981); *Stuckey v. Stynchcombe*, 614 F.2d 75 (5th Cir.1980); *Garcia v. United States*, 492 F.2d 395 (10th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 178, 42 L.Ed.2d 142 (1974); *People ex rel. Gallagher v. District Court*, 632 P.2d 1009 (Colo.1981); *People v. Hinchman*, 196 Colo. 526, 589 P.2d 917 (1979).[2]

**2.** Drake argues that the constitutional prohibition against double jeopardy prohibits any resentencing in this case because the respondent court entered a dismissal order with respect to the habitual criminal counts before submitting to the jury the substantive crimes of murder in the first degree and accessory to murder in the first degree. Drake's argument, however, is unsupported by the record. At a conference directed toward settling instructions on the substantive crimes, the respondent court indicated that it was "leaning" toward the position that the Habitual Criminal Act would not apply to a guilty verdict on the lesser included offense but that it nevertheless was going to permit the prosecution to establish the prior felony convic-

tions in the second phase of the trial in the event the jury returned a guilty verdict to the lesser nonincluded offense. Rather than dismiss the habitual criminal counts, the respondent court submitted these counts to the jury, along with an appropriate verdict form, at the second phase of the trial. Only after the jury returned its verdict finding that Drake had been previously convicted as charged did the respondent court, after expressly stating that it had previously reserved ruling on the issue, state that it would not sentence Drake as a habitual criminal. The record thus makes abundantly clear that the habitual criminal counts were not dismissed at any time before the completion of

### III.

We turn now to the question of whether the respondent court's sentence of seven years and eight months for the class 4 felony of accessory to murder in the first degree was an illegal sentence in light of the fact that the jury returned verdicts expressly finding that the defendant had been convicted of the three prior felonies charged against him in the habitual criminal counts. The answer to that question depends, in turn, on whether Colorado's Habitual Criminal Act mandates the enhanced statutory penalties for habitual criminality when the substantive offense supporting the habitual criminal proceeding is a lesser nonincluded felony submitted to the jury at the defendant's request. An analysis of the Habitual Criminal Act leads us to conclude that the sentence of seven years and eight months was contrary to law.

Section 16–13–101(2), 8 C.R.S. (1985 Supp.), states in pertinent part as follows:

Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony ... shall be adjudged an habitual criminal and shall be punished by imprisonment in a correctional facility for the term of his or her natural life.

In refusing to impose the life sentence mandated by this statute, the respondent court focused on subsection (1) of section 16–13–103, 8 C.R.S. (1985 Supp.), which contains the procedures for a bifurcated trial in cases involving habitual criminal counts and which states in pertinent part as follows:

If the allegation of previous convictions of other felony offenses is included in an indictment or information and *if a verdict of guilty of the substantive offense with which the defendant is charged is returned,* the court shall conduct a sepa-

rate sentencing hearing to determine whether or not the defendant has suffered such previous felony convictions. (emphasis added). The respondent court construed the emphasized language of section 16–13–103(1), 8 C.R.S. (1985 Supp.), to mean that the bifurcated trial on habitual criminal counts can take place only when the defendant is actually convicted of the substantive offense charged, or a lesser included offense, but not when he is convicted of a lesser nonincluded offense. The respondent court's interpretation of the statute is erroneous.

Because legislative intent is the polestar of statutory construction, a statute should be given that construction which will permit, if at all feasible, the accomplishment of the statutory objective. *Schubert v. People,* 698 P.2d 788, 793 (Colo.1985); *People v. Lee,* 180 Colo. 376, 381, 506 P.2d 136, 139 (1973). The purpose of the Habitual Criminal Act is to punish more severely those individuals who show a propensity toward repeated criminal conduct. *Gimmy v. People,* 645 P.2d 262, 267 (Colo.1982); *People v. Gutierrez,* 622 P.2d 547, 555 (Colo.1981); *People v. Lake,* 195 Colo. 454, 461, 580 P.2d 788, 792–93 (1978). Section 16–13–103(1), 8 C.R.S. (1985 Supp.), is an expression of legislative intent that, in accomplishing this overriding purpose, an adjudication of habitual criminality should be made in accordance with the same procedural and constitutional safeguards traditionally associated with a trial on guilt or innocence. *People v. Quintana,* 634 P.2d 413, 419 (Colo.1981). The legislature's adoption of these statutory safeguards, however, was not intended to modify in any manner section 16–13–101(2), 8 C.R.S. (1985 Supp.), which requires the imposition of a life sentence when an accused has been found guilty of a felony and the jury also finds that he has been three times previously convicted of other felonies alleged against him in the indictment or information.

both the substantive and habitual criminal phases of the trial. Under the circumstances present here, Drake can be resentenced by the respon-

dent court without running afoul of the double jeopardy prohibition.

 The procedural safeguards of section 16–13–103(1), 8 C.R.S. (1985 Supp.), can readily be given full effect without undercutting the overriding purpose sought to be achieved by the statutory scheme.[3] Here, it was the defendant who requested the instruction on accessory to murder in the first degree and the accompanying verdict form for that lesser nonincluded offense. Such request was "tantamount to [the] defendant's consent to an added count being charged against him." *People v. Rivera,* 186 Colo. 24, 29, 525 P.2d 431, 434 (1974). The defendant, to be sure, was under no obligation to seek an instruction on a lesser nonincluded offense. When such a request was made and granted, however, the defendant thereby acquiesced in placing a lesser nonincluded felony before the jury and stood in the same position as if that offense had originally been included in the charging document. The guilty verdict on the lesser nonincluded felony thereby triggered the habitual criminal phase of the trial which, so far as the sparse record permits us to determine, was conducted in accordance with the statutory procedures mandated by the Habitual Criminal Act.

 We are not unmindful of the rule of lenity which requires a narrow construction of ambiguous criminal statutes in favor of the accused. *E.g. People v. Lowe,* 660 P.2d 1261, 1268 (Colo.1983); *People v. Cornelison,* 192 Colo. 337, 340, 559 P.2d 1102, 1105 (1977). The rule of lenity, however, is intended only to resolve a statutory ambiguity and not to create an ambiguity in disregard of the clear legislative purpose. *Albernaz v. United States,* 450 U.S. 333, 342, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981); *Schubert,* 698 P.2d at 794, n. 12; *Gimmy,* 645 P.2d at 266. Section 16–13–101(2), 8 C.R.S. (1985 Supp.), expressly mandates a life sentence when the defendant has been charged with a felony and with habitual criminality based on three prior felony convictions, the jury finds the defendant guilty of a felony in the trial of the substantive charge, and the jury also determines that the defendant has been previously convicted of the three other felonies charged against him in the indictment or information. The respondent court's sentence of seven years and eight months was contrary to this statutory mandate and was therefore illegal.

The rule to show cause is made absolute and the respondent court is ordered to resentence the defendant in accordance with the provisions of section 16–13–101(2), 8 C.R.S. (1985 Supp.).

---

**3.** Our construction of the habitual criminal statute must be undertaken with an eye toward "avoiding the adverse consequences on the administration of justice that might otherwise flow from a construction not contemplated by the legislature." *Schubert v. People,* 698 P.2d 788, 795 n. 12 (Colo.1985). To limit an adjudication of habitual criminality to those cases in which the defendant was convicted of the substantive offense charged or a legally lesser included offense would require the district attorney to file every lesser nonincluded felony charge which might conceivably find support in the evidence and be the basis of a defendant's tendered instruction to the jury. Such a requirement would substantially encumber the effective administration of criminal justice.