531 P.3d 420
2023 COA 23
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Rodney Dewayne MCDONALD, Defendant-Appellant.
Court of Appeals No. 21CA0750
Colorado Court of Appeals, Division VII.
Announced March 9, 2023
Rehearing Denied April 27, 2023
Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
Megan A. Ring, Colorado State Public Defender, Casey Mark Klekas, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
Opinion by JUDGE KUHN
¶ 1 Defendant, Rodney Dewayne McDonald, appeals the district court's order denying his most recent postconviction motion. Specifically, McDonald requests that we declare, as a matter of first impression, that our supreme court's decision in Wells-Yates v. People , 2019 CO 90M, 454 P.3d 191 —which discussed how courts should conduct proportionality challenges to sentences under the Habitual Criminal Act—announced new rules of constitutional law that apply retroactively. McDonald then asks that we reverse the district court's ruling that his most recent postconviction motion was procedurally barred.
¶ 2 We hold that, to the extent Wells-Yates announced new constitutional rules, those rules are procedural and don't apply retroactively. Consequently, we also conclude that the district court properly denied McDonald's motion as procedurally barred and affirm the order.
I. Background
¶ 3 In 1996, a jury convicted McDonald of attempted first degree murder and second degree assault, both with crime of violence enhancements, as well as possession of a weapon by a previous offender. The trial court also found McDonald had two prior felony convictions—conspiracy to commit menacing and possession of a controlled substance—and therefore adjudicated him a habitual offender. The court then sentenced McDonald to a controlling term of seventy-two years in prison.
¶ 4 A division of this court affirmed the judgment of conviction and sentence, and the supreme court denied certiorari. See People v. McDonald , (Colo. App. No. 97CA0356, Aug. 20, 1998) (not published pursuant to C.A.R. 35(f) ).
¶ 5 In 2000, McDonald filed a timely Crim. P. 35(c) motion raising various postconviction claims, followed by a motion for reconsideration of his sentence and a proportionality hearing in 2007.[1] After holding a hearing on 531 P.3d 423 each motion, the postconviction court denied them both. A division of this court affirmed the denials, and the supreme court denied certiorari. See People v. McDonald , 2009 WL 146987 (Colo. App. No. 07CA0491, Jan. 22, 2009) (not published pursuant to C.A.R. 35(f) ).
¶ 6 Then, in September 2020, McDonald filed a "motion to vacate illegal sentence"—his third postconviction motion, and the motion at issue here. In the 2020 motion, McDonald requested a new proportionality review of his sentence, observing that "[r]ecent decisions by the Colorado Supreme Court" provided "new guidance" for how courts should evaluate sentence proportionality. McDonald also asked the district court to vacate his sentence, arguing it was illegal because, after he was sentenced, the Department of Corrections (DOC) didn't complete the violent offender evaluation required under section 18-1.3-406(1)(a), C.R.S. 2022.[2] ¶ 7 After additional briefing and argument, the district court denied the motion without an evidentiary hearing, finding that (1) the proportionality claim was successive and therefore procedurally barred under Crim. P. 35(c) ; and (2) the claim regarding the violent offender evaluation wasn't an illegal sentence claim that could be brought anytime under Crim. P. 35(a), so it was also procedurally barred.
II. Proportionality Challenge
¶ 8 On appeal, the People contend that McDonald's proportionality claim falls under Crim. P. 35(c) and is therefore subject to that rule's procedural bars. See Lucero v. People , 2017 CO 49, ¶ 26, 394 P.3d 1128 ; see People v. Moore-El , 160 P.3d 393, 395 (Colo. App. 2007) (explaining that a request for a proportionality review is a challenge to the constitutionality of a sentence under the Eighth Amendment and subject to the provisions of Crim. P. 35(c) ). McDonald does not disagree. Thus, unless an exception applies, his 2020 motion is procedurally barred as successive or untimely, or both. See Crim. P. 35(c)(3)(VI).
¶ 9 However, McDonald argues that we should nevertheless consider his proportionality challenge because otherwise procedurally barred postconviction claims can be brought if they are based on a new rule of constitutional law that applies retroactively. See Crim. P. 35(c)(3)(VI)(b), (VII)(c) ; § 16-5-402(2)(d), C.R.S. 2022; People v. Rainer , 2013 COA 51, ¶¶ 24–29, 412 P.3d 520, rev'd on other grounds , 2017 CO 50, 394 P.3d 1141. And, according to McDonald, our supreme court's decision in Wells-Yates announced such new rules of constitutional law. We disagree.
A. Standard of Review ¶ 10 We review de novo a trial court's decision to deny a Crim. P. 35(c) motion without an evidentiary hearing. People v. Gardner , 250 P.3d 1262, 1266 (Colo. App. 2010). A court may deny a Crim. P. 35(c) motion without a hearing only if the motion, the files, and the record clearly establish that the defendant's allegations are without merit and that they therefore do not warrant relief. Ardolino v. People , 69 P.3d 73, 77 (Colo. 2003).
B. Retroactivity
¶ 11 As an initial matter, the People contend that Wells-Yates didn't "set forth a new rule" of constitutional law but instead only established "a variation on long-established ones." Thus, the People argue, there is no "new rule" to apply retroactively and excuse the Crim. P. 35(c) procedural bars. See People v. Wenzinger , 155 P.3d 415, 420 (Colo. App. 2006) ("The subject of retroactivity arises only in the presence of new rules. Retroactivity is not an issue if a court merely states the law that was in effect when the defendant's conviction became final." (citing Fiore v. White , 531 U.S. 225, 228, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001) )).
531 P.3d 424 ¶ 12 We need not decide this issue because, even if Wells-Yates did create new rules of constitutional law, those rules are procedural, not substantive, and therefore don't apply retroactively.
1. Relevant Law ¶ 13 Generally, a new rule does not apply retroactively to cases that became final before the rule's announcement. Teague v. Lane , 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). However, there are two exceptions to this general bar on retroactivity: if the new rule is (1) substantive in nature or (2) a "watershed" procedural rule that implicates the fundamental fairness and accuracy of the criminal proceeding.[3] See Welch v. United States , 578 U.S. 120, 128, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016) ; People v. Johnson , 142 P.3d 722, 724 (Colo. 2006). ¶ 14 Substantive rules are rules that forbid "criminal punishment of certain primary conduct" or prohibit "a certain category of punishment for a class of defendants because of their status or offense." Montgomery v. Louisiana , 577 U.S. 190, 206, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016) (quoting Penry v. Lynaugh , 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ). Procedural rules, in contrast, "regulate only the manner of determining the defendant's culpability." Welch , 578 U.S. at 129, 136 S.Ct. 1257 (quoting Schriro v. Summerlin , 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) ). Such rules alter "the range of permissible methods for determining whether a defendant's conduct is punishable." Id. (quoting Schriro , 542 U.S. at 353, 124 S.Ct. 2519 ). They do not, however, "produce a class of persons convicted of conduct the law does not make criminal." Id. (quoting Schriro , 542 U.S. at 353, 124 S.Ct. 2519 ).
2. Wells-Yates ¶ 15 In Wells-Yates , our supreme court clarified its approach to proportionality challenges under the Habitual Criminal Act.
¶ 16 Habitual criminal sentences, which are authorized by the Habitual Criminal Act, §§ 18-1.3-801 to - 803, C.R.S. 2022, punish more severely "those individuals who show a propensity toward repeated criminal conduct." Wells-Yates , ¶ 1 (quoting People v. Dist. Ct. , 711 P.2d 666, 670 (Colo. 1985) ). A defendant convicted under the Habitual Criminal Act can be subjected to a sentence three or four times longer than the presumptive maximum for a given offense. See § 18-1.3-801. This creates "a unique possibility" that a defendant will receive a sentence that, contrary to the Eighth Amendment's ban on cruel and unusual punishment, "is not proportionate to the crime for which [he] has been convicted." Wells-Yates , ¶ 20 (quoting Alvarez v. People , 797 P.2d 37, 40 (Colo. 1990) ). ¶ 17 If a defendant believes he has been subjected to an unconstitutionally disproportionate sentence, he can request a proportionality review in which a court will compare the gravity or seriousness of his current and past offenses, called the triggering and predicate offenses, respectively, to the harshness of the penalty imposed for the triggering offense. Id. at ¶¶ 8, 23.
¶ 18 In Wells-Yates , our supreme court clarified how Colorado courts should evaluate these proportionality challenges. See id. at ¶¶ 2, 11–12, 15, 18. McDonald contends that, in doing so, the court announced two new rules:
• First, the court held that, when evaluating the gravity or seriousness of a defendant's offenses, courts should "consider relevant legislative amendments enacted after the date of the offense, even if [they] do not apply retroactively." Id. at ¶ 45.
• Second, the court stated that the "per se" grave and serious designation should 531 P.3d 425 be reserved for "those rare crimes which, based on their statutory elements, necessarily involve grave or serious conduct," and with that in mind, the court held that not all drug offenses are per se grave or serious. Id. at ¶¶ 63, 76.
¶ 19 McDonald contends that these rules are substantive because they "place[ ] particular conduct and persons beyond the state's power to punish." In support of this contention, McDonald points to Welch , 578 U.S. 120, 136 S.Ct. 1257, and Johnson v. United States , 576 U.S. 591, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). But those cases are distinguishable.
¶ 20 In Johnson , the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA) was unconstitutionally vague and therefore void. 576 U.S. at 606, 135 S.Ct. 2551. Then, in Welch , the Court considered whether Johnson ’s holding created a new substantive rule that applied retroactively. The Court determined that it did. Welch , 578 U.S. at 129, 136 S.Ct. 1257. In doing so, it observed that "[b]efore Johnson , the [ACCA] applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause." Welch , 578 U.S. at 129, 136 S.Ct. 1257. "An offender in that situation faced 15 years to life in prison." Id. at 129–30, 136 S.Ct. 1257. However, after the residual clause was invalidated in Johnson , "the same person engaging in the same conduct [was] no longer subject to the [ACCA] and face[d] at most 10 years in prison." Id.
¶ 21 In contrast to Johnson , Wells-Yates did not "change[ ] the scope of the underlying criminal proscription," Welch , 578 U.S. at 131, 136 S.Ct. 1257 —that is, it did not impact who is subject to the Habitual Criminal Act and its heightened penalties. Instead, Wells-Yates only clarified the methods Colorado courts should use when evaluating whether a habitual sentence is constitutionally disproportionate in a given case. See Welch , 578 U.S. at 130, 136 S.Ct. 1257 (providing examples of procedural decisions, including those that "allocate decisionmaking authority" between judge and jury or regulate the evidence that the court can consider in making its decision (quoting Schriro , 542 U.S. at 353, 124 S.Ct. 2519 )).
¶ 22 As discussed, Wells-Yates clarified, as relevant here, that (1) courts performing proportionality evaluations should consider amendatory legislation even if it applies only prospectively; and (2) because neither possession nor possession with intent to distribute is per se grave or serious, courts must complete "an individualized determination" based on the facts and circumstances when evaluating a proportionality claim involving one or more of those offenses. These are procedural—not substantive—rules. See Montgomery , 577 U.S. at 209–10, 136 S.Ct. 718 (observing that Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which barred life without parole for all but "the rarest of juvenile offenders" and therefore was a substantive decision, also had a procedural component because it instructed sentencing courts to consider a juvenile offender's youth and attendant characteristics before determining whether life without parole was a proportionate sentence); cf. Welch , 578 U.S. at 130, 136 S.Ct. 1257 (observing that Johnson was not a procedural decision because it didn't affect the "judicial procedures by which [a] statute is applied" and it had "nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the [ACCA]").
¶ 23 McDonald doesn't argue that Wells-Yates ’s new rules meet the second exception to the general bar to retroactivity—i.e., that they constitute "watershed" rules of criminal procedure—and we don't see how they could. See Beard v. Banks , 542 U.S. 406, 417, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (emphasizing the limited scope of the watershed-rules-of-criminal-procedure exception, explaining that it is "clearly meant to apply only to a small core of rules requiring the observance of those procedures that ... are implicit in the concept of ordered liberty" (quoting O'Dell v. Netherland , 521 U.S. 151, 157, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) )).
¶ 24 Accordingly, we hold that Wells-Yates doesn't apply retroactively because, to the extent it announced new rules as suggested by McDonald, those rules are procedural, not 531 P.3d 426 substantive. As a result, the exceptions to Crim. P. 35(c) ’s procedural bars don't apply to McDonald's 2020 claims regarding the proportionality of his sentence, and they were properly denied.
III. Violent Offender Evaluation ¶ 25 McDonald next contends that the district court erred by denying his Crim. P. 35(a) claim that his sentence is illegal because the DOC failed to submit a violent offender evaluation after he was sentenced and in custody. We are unpersuaded. ¶ 26 We review the legality of a sentence and the summary denial of a Crim. P. 35 motion de novo. People v. Bassford , 2014 COA 15, ¶ 20, 343 P.3d 1003 ; see also Gardner , 250 P.3d at 1266. ¶ 27 Under Crim. P. 35(a), a court may correct a sentence "that was not authorized by law or that was imposed without jurisdiction at any time." A sentence is not authorized by law for purposes of this rule if the trial court lacked the authority to impose it. See People v. Rockwell , 125 P.3d 410, 416 (Colo. 2005) ; Delgado v. People , 105 P.3d 634, 635–37 (Colo. 2005) (addressing a defendant's Crim. P. 35(a) claim that his sentence, which included mandatory parole, was illegal because the applicable statute required that he receive discretionary, not mandatory, parole).
¶ 28 McDonald doesn't contend that any portion of his sentence isn't authorized by the relevant sentencing statutes. Instead, he contends his sentence is illegal because the DOC didn't submit to the sentencing court the crime of violence evaluation required under section 18-1.3-406(1)(a). But the evaluation isn't a component of his sentence. Thus, McDonald doesn't contend that any part of his sentence, or any part of the imposed punishment, is illegal. See People v. Baker , 2019 CO 97M, ¶¶ 19–20, 452 P.3d 759 (for a sentence to be not authorized by law within the meaning of Crim. P. 35(a), one of its components must be unauthorized); cf. Delgado , 105 P.3d at 636–37 (collecting cases where an illegal sentence was imposed, including one case where a court ordered a defendant to participate in work-release that wasn't statutorily available and another case where a court suspended a defendant's sentence even though the relevant sentencing provisions didn't authorize suspended sentences).
¶ 29 The text of section 18-1.3-406(1)(a) further supports our conclusion that the violent offender evaluation is not a component of McDonald's sentence. That statute provides that, within ninety-one days after a defendant convicted of a crime of violence "has been placed in the custody of the [DOC]"—i.e., after the defendant has been sentenced—the DOC "shall transmit to the sentencing court a report on the evaluation and diagnosis of the violent offender."[4] § 18-1.3-406(1)(a). The statute then provides that, if the sentencing court considers the case exceptional and involving unusual and extenuating circumstances, it "may thereupon modify the sentence ." Id. (emphasis added).
¶ 30 Because the violent offender evaluation is completed only after a defendant's sentence has already been imposed, and a court may consider the evaluation to modify an already imposed sentence, the evaluation isn't a component of the sentence. Therefore, this claim isn't an illegal sentence claim. See Baker , ¶¶ 19–20.
¶ 31 To the extent McDonald's claim that the DOC failed to complete and transmit the required violent offender evaluation is cognizable at all under Crim. P. 35, it would be better understood as an illegal manner claim. See id. (defendant's claim that the sentencing court failed to find the specific amount of pre-sentence confinement credit and note it in the mittimus, as required by statute, is an illegal manner claim). However, Crim. P. 35(a) requires that illegal manner claims be brought within the timeframe prescribed in Crim. P. 35(b) —now 126 days after the sentence was imposed or after certain appellate action on direct appeal—and McDonald filed his motion well after that time.[5] 531 P.3d 427 ¶ 32 Based on the foregoing, we conclude that the district court didn't err by denying this claim.
IV. Conclusion
¶ 33 The order is affirmed.
JUDGE HARRIS and JUDGE GROVE concur.
--------
Notes:
[1] At one of the hearings on the 2000 Crim. P. 35(c) motion, the postconviction court observed that McDonald's postconviction counsel failed to file a Crim. P. 35(b) motion for sentence reconsideration despite asking for an extension of time to do so. Because it appeared that counsel had failed to file the motion by mistake, the postconviction court allowed McDonald to file it after the hearing on the 2000 motion.
[2] In the 2020 motion, McDonald actually claimed that the DOC's failure to complete the violent offender evaluation violated his due process rights. However, the district court treated this argument as a claim that McDonald's sentence is illegal, and that's how McDonald frames it on appeal. We therefore treat it the same way.
[3] Although the Supreme Court abandoned the "watershed" exception for purposes of federal collateral review in Edwards v. Vannoy , 593 U.S. ––––, ––––, 141 S. Ct. 1547, 1559–60, 209 L.Ed.2d 651 (2021), Colorado courts have separately adopted that rule for purposes of state collateral review. See Edwards v. People , 129 P.3d 977, 983 (Colo. 2006) (adopting the federal test for determining whether a rule of criminal procedure is retroactive). Because McDonald doesn't contend that Wells-Yates created a watershed procedural rule, we need not address any federal change to this exception.
[4] The relevant statute at the time McDonald was sentenced provided that the evaluation be submitted within ninety days after a defendant was placed in custody. § 16-11-309(1)(a), C.R.S. 1996. Because the variation in timing doesn't change our analysis, we refer to the current statute.
[5] The rule in effect when McDonald was sentenced permitted a challenge within 120 days after the sentence was imposed. Crim. P. 35(b) (1997). This variation in timing also doesn't affect our analysis.
--------